(174 P.3d 904)
No. 96,719

STATE OF KANSAS, *Appellee,* v. TIM MORTON, *Appellant.*

968

Opinion filed January 18, 2008.

*Korey A. Kaul,* of Kansas Appellate Defender Office, for appellant.

*Eric L. Witcher,* county attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before MARQUARDT, P.J., LEBEN, J., and KNUDSON, S.J.

KNUDSON, J.: Tim Morton appeals his convictions for aggravated battery of a law enforcement officer and aggravated assault on a law enforcement officer. The issues on appeal are: (1) was there prosecutorial misconduct; (2) was the evidence sufficient to support the aggravated battery of a law enforcement officer conviction; and (3) were prior criminal convictions improperly considered in determining Morton's criminal history.

We affirm. There was prosecutorial misconduct, but it did not prejudice Morton's right to a fair trial. The evidence was sufficient to support both convictions. Including prior criminal convictions in an offender's criminal history without submission to a jury or requiring proof beyond a reasonable doubt is proper. See *State v. Ivory,* 273 Kan. 44, 41 P.3d 781 (2002).

*Underlying Circumstances*

On September 7, 2005, the Morton County Sheriff's Department apprehended Tim Morton who had escaped from lawful custody. Sheriff Loren Youngers transported Morton from his jail cell to the local hospital for treatment of an arm laceration Morton had sustained during his escape. While being treated in the emergency room, Morton escaped from custody a second time by feigning diarrhea and sneaking out of the bathroom.

When Youngers discovered Morton was missing, he left the hospital and drove several blocks away to a house owned by one of Morton's relatives. He immediately observed Morton enter the residence. Youngers chased Morton into the basement and discovered Morton attempting to hide on top of a freezer at the base of the

stairs. Youngers apprehended Morton and escorted him outside to his pickup.

When Youngers attempted to place Morton in handcuffs, Morton began to struggle. Attempting to escape, Morton gained access to the cab of Youngers' pickup, and Youngers wrestled him down onto the driver's seat. Morton then tried to place the pickup in gear, but Youngers held the brake with his foot to prevent the vehicle from moving. When Youngers reached over to keep Morton from moving the gearshift, Morton began biting Youngers' arm. Morton also acquired Youngers' flashlight and struck Youngers several times on his arm, hand, and shoulder.

Undersheriff Jason LaRue arrived at the scene and observed Youngers and Morton fighting in the pickup. LaRue attempted to assist Youngers in restraining Morton. Morton was revving the engine and trying to place the vehicle in gear. At one point, Morton was able to put the vehicle in reverse and it traveled backwards approximately 10 feet before LaRue could put the vehicle back in park. LaRue eventually removed the keys from the ignition and threw them into the bed of the truck.

When Officer Loren Coen arrived, he entered the vehicle through the passenger door and grabbed Morton by the neck and shoulder. Youngers warned Coen that Morton was trying to bite them. Coen eventually managed to restrain Morton and place him in handcuffs.

The State charged Morton with one count of escape from custody, two counts of aggravated battery on a law enforcement officer, three counts of aggravated assault on a law enforcement officer, one count of obstructing legal process or official duty, and one count of attempted theft.

Morton's trial strategy consisted of persuading the jury that his actions did not rise to the level of harm required for aggravated assault and aggravated battery of a law enforcement officer. In other words, he did not deny that a struggle had occurred with the officers, but rather attempted to direct the jury's attention to inconsistencies that would tend to indicate Morton was guilty of the lesser charges of simple assault and battery.

Youngers, LaRue, and Coen all testified regarding the events surrounding Morton's escape and eventual arrest. Youngers testified that he was afraid Morton would strike him on the head with the flashlight, which would have severely injured or killed him. LaRue indicated he was afraid that he would be caught in the door and get smashed between the pickup and another vehicle. Coen similarly indicated he feared that Morton would bite him.

The jury found Morton guilty of aggravated escape from custody, guilty of aggravated battery against Officer Youngers, not guilty of aggravated assault against Officer Youngers, guilty of aggravated assault against Officer LaRue, not guilty of aggravated assault against Officer Coen, and guilty of obstructing official duty.

The district court sentenced Morton to 41 months' imprisonment. Morton did not object to his criminal history score of F.

*Sufficiency of the Evidence*

Morton contends biting Youngers' arm could not have caused disfigurement and therefore could not support his conviction of aggravated battery of a law enforcement officer.

"When the sufficiency of the evidence is reviewed in a criminal case, [an appellate] court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006).

In the present case, Morton was charged with aggravated battery on a law enforcement officer pursuant to K.S.A. 2006 Supp. 21-3415 under the following definition of aggravated battery stated in K.S.A. 21-3414(a)(1)(B): "intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."

Our Supreme Court defines "great bodily harm" as "more than slight, trivial, minor, or moderate harm, and does not include mere bruising, which is likely to be sustained by simple battery." *State v. Green*, 280 Kan. 758, 765, 127 P.3d 241, *cert. denied* 549 U.S. 913 (2006) (citing *State v. Moore*, 271 Kan. 416, 419, 23 P.3d 815 [2001]). Unless specifically designated "great bodily harm" as a

matter of law, the issue of whether an injury constitutes great bodily harm is a question of fact for the jury. 280 Kan. at 765.

Morton relies on *Green* to argue that as a matter of law the bite on Youngers' arm was at most a simple battery that could not cause great bodily harm or disfigurement. Morton's argument is not persuasive. Green was convicted of voluntary manslaughter. An issue on appeal was whether a bar fight resulted in great bodily harm. The Supreme Court stated: "[T]he facts of each case are evaluated to determine whether a bar fight results in great bodily harm. Because that factual determination is within the province of the jury, an appellate court is limited to reviewing the record for evidence to support the jury's decision. [Citation omitted.]" 280 Kan. at 765.

In *Green*, the factual issue was whether there was in fact great bodily harm to support the voluntary manslaughter conviction. In the present appeal, the factual issue was not whether there was great bodily harm inflicted, but whether great bodily harm could have been inflicted. While *Green* provides a useful definition of "great bodily harm," the Supreme Court clearly held the extent of harm is normally a question for the jury. 280 Kan. at 765.

Likewise, *Moore* does not support Morton's argument. In *Moore*, the defendant grabbed an iron and burned the victim's legs. He then lifted her shirt, burned her breast, and dropped the iron between her legs, burning her inner thighs. An issue on appeal was whether these actions caused great bodily harm or disfigurement. The Supreme Court noted:

"Disfigurement has no single technical meaning or single definition and should be considered in the ordinary sense. When an injury has been established, the question of whether it constitutes great bodily harm or disfigurement is normally a question to be determined by the trier of fact." 271 Kan. 416, Syl. ¶ 3.

*Green* and *Moore* considered whether great bodily harm *had* occurred. In addition, both cases clearly demonstrate the issue as to degree of harm is a fact question for the jury. Consequently, neither case supports Morton's argument of error.

We conclude Morton fails to grasp the distinction between K.S.A. 21-3414(a)(1)(B) with K.S.A. 21-3414(a)(1)(A) ([i]nten-

tionally causing great bodily harm . . . . or disfigurement). In this prosecution, the State was not required to prove great bodily harm or disfigurement was inflicted, only that it could have been inflicted.

We hold the question of whether biting an individual could inflict great bodily harm or disfigurement was a question for the jury in this case. Considering all of the evidence, viewed in a light most favorable to the prosecution, a rational factfinder could have found Morton guilty beyond a reasonable doubt.

### Prosecutorial Misconduct

On appeal, Morton complains of several instances of what he believes constituted prosecutorial misconduct. Morton failed to object to several of the alleged instances. Nevertheless, a contemporaneous objection to alleged prosecutorial misconduct is not required in order to preserve the issue for appeal; an appellate court will apply the same standard of review regardless of whether the defendant lodged an objection. *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007).

Appellate review of an allegation of prosecutorial misconduct requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. 283 Kan. at 428.

In the second step of the two-step analysis, the appellate court considers three factors:

"(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, [22,] 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) [(federal constitutional standard—conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed

the result of the trial)], have been met. [Citations omitted.]" *Albright*, 283 Kan. at 428.

First, Morton contends the State improperly bolstered Youngers' credibility. Morton cites to a single sentence made during the prosecutor's closing argument: "[Youngers] has absolutely nothing to gain from his testimony, other than for you to find the truth."

Generally, a prosecutor's personal opinion in closing argument regarding the credibility of a witness is improper. See *State v. Davis*, 275 Kan. 107, 122-23, 61 P.3d 701 (2003). However, reasonable inferences may be drawn from the evidence and considerable latitude is allowed the prosecutor in discussing the evidence. *State v. Anthony*, 282 Kan. 201, 210, 145 P.3d 1 (2006); *Davis*, 275 Kan. at 122-23; *State v. Finley*, 273 Kan. 237, 244-47, 42 P.3d 723 (2002).

Here, the prosecutor's opinion does appear inappropriate because it was not based on reasonable inferences from the evidence. The comment is similar to the comments disallowed in *State v. Donaldson*, 279 Kan. 694, 708-09, 112 P.3d 99 (2005).

However, even if improper, it consists of a single sentence unlike the remarks made in *Donaldson*. The statement was not emphasized or repeated in violation of the court's ruling and cannot be considered so gross and flagrant as to prejudice Morton. There is no indication that the prosecutor exhibited any ill will in making this brief statement. The comment had little, if any, likelihood of changing the result of the trial. The evidence against Morton was direct and overwhelming. The three officers who were present during the encounter testified to the events. Their testimony was relatively consistent, uncontroverted, and easily satisfied all the statutory elements of the crimes. The State presented photographic evidence of the scene of the struggle, the interior of Youngers' pickup, and Youngers' injuries. In addition, the jury was properly instructed as to the weight to be given to arguments.

Next, Morton contends the prosecutor misstated the elements of aggravated assault on a law enforcement officer. "A misstatement of the law by the prosecutor denies the defendant a fair trial when the facts are such that the jury could have been confused or

misled by the statement. [Citation omitted.]" *State v. Bunyard*, 281 Kan. 392, 404, 133 P.3d 14 (2006).

In the present case, the prosecutor informed the jury during closing argument:

"I want to read the instructions to you, all right. 'In Count 5, defendant is charged with the crime of aggravated assault on a law enforcement officer. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved: That the defendant intentionally placed Loren Coen in reasonable apprehension of immediate bodily harm.' That's it. It doesn't say death. It doesn't say serious bodily harm. It says 'reasonably placed him in immediate bodily harm.' So all those comments by Mr.—are wrong."

Morton immediately objected to the prosecutor's statement. The district court sustained his objection, indicating that the comment was appropriate.

Morton claims that the prosecutor misstated the elements of aggravated assault by stating that the jury instruction did not mention death or serious bodily harm. While of course the jury instruction does contain a reference to "death or serious injury," Morton has taken the prosecutor's comment out of context.

First, as Morton concedes, the court must consider that the prosecutor's comment was in response to defense counsel's improper argument that the State had to prove death, disfigurement, or serious bodily injury in order to convict Morton of aggravated assault. During closing argument, Morton's counsel stated:

"And so if you do see fit to believe exactly what the officers said on the stand today, notwithstanding all the other physical evidence that was at the same time or concurrent with the event, we would ask you to find that there was no death or serious bodily injury in connection with any of the assaults or batteries."

Clearly the instruction did not require the jury to find that actual death or serious bodily injury occurred. Moreover, the prosecutor was referring to the first element of the instruction, which requires only proof that Morton placed Coen in reasonable apprehension of immediate bodily harm and not proof that Coen actually sustained death or serious bodily injury. In making this statement, the prosecutor did not implicate the portion of the instruction regarding use of a deadly weapon, to which Morton now refers. Because the comment fell within the wide latitude afforded prosecutors and

did not constitute a misstatement of the elements, Morton's argument fails.

Morton next argues that the prosecutor improperly referred to two prior incidents when Morton escaped from police custody when they were not introduced as evidence.

"The fundamental rule for closing arguments is that the prosecutor must confine his or her remarks to matters in evidence. It is clearly improper for the prosecutor to state facts that are not in evidence. When the prosecutor argues facts that are not in evidence, the first prong of the prosecutorial misconduct test is met, and an appellate court must consider whether the misstatement of fact constitutes plain error." *State v. Ly*, 277 Kan. 386, Syl. ¶ 4, 85 P.3d 1200, *cert. denied* 541 U.S. 1090 (2004).

Here, Morton refers to the prosecutor's comment during closing argument that Morton "knew exactly what he had done because he had done this twice before. He had escaped twice before." The district court sustained Morton's objection because evidence of two prior escapes was not in the record. The court then admonished the jury to disregard the comment.

Review of the trial transcript reveals that the jury had been informed of one prior incident when Morton had escaped from police custody. There does not appear to be any references to a second incident in which Morton had escaped. Therefore, the prosecutor's statement was outside the wide latitude allowed in closing argument.

However, given the fact that only a single passing reference was made to the two prior incidents when Morton had escaped from custody and they were not emphasized, the prosecutor's conduct cannot be considered gross and flagrant or to have demonstrated ill will. In fact, the prosecutor's reference to two prior incidents can be interpreted as confusion or a misstatement on the prosecutor's part because the jury was aware of at least two incidents. Moreover, there was ample evidence before the jury to support the defendant's convictions. Thus, the prosecutor's statements during closing argument did not constitute reversible error.

Morton's final contention is that the prosecutor's reference to "smoke and mirrors" was an improper characterization of defense

counsel's argument and therefore warrants reversal of his convictions.

Our Supreme Court has, on several occasions, held that the use of "smoke and mirrors" type comments are within the wide latitude permitted to prosecutors in closing arguments. See *State v. Rodriguez*, 269 Kan. 633, 643-45, 8 P.3d 712 (2000) (prosecutor's "puff of smoke" language was not improper when made in response to defense counsel's tactics and arguments); *State v. Duke*, 256 Kan. 703, 718-20, 887 P.2d 110 (1994) (prosecutor's "smoke and mirrors" comments implying that defense counsel was trying to intentionally mislead the jury were within the permissible bounds of rhetoric); *State v. Baker*, 249 Kan. 431, 447-49, 819 P.2d 1173 (1991) (prosecutor's " 'smoke screen' " and " 'nice boy image' " comments did not provide basis for reversible error); see also *State v. McCray*, 267 Kan. 339, 348-51, 979 P.2d 134 (1999) (some of prosecutor's comments insinuating that defense counsel had tried to deceive or intimidate the jury were impermissible, but remarks did not change the result of the trial).

Kansas courts have refused to find prosecutorial misconduct occurred in cases where the comments are far more calculated and detailed than those in the present case. For example, in *Anthony*, 282 Kan. at 211, the court held that the prosecutor's comments during closing argument of a murder trial that described a scene from film version of "The Wizard of Oz" and repeatedly compared defendant to "the man behind the curtain" did not exceed the bounds of legitimate rhetoric and was responsive to the defense argument that questioned the thoroughness of the police investigation of the murder. Similarly, in *Albright*, the prosecutor's references during closing argument of a murder trial to "SODDI" or "some other dude did it" approach of defense and to the phantom "Not Me" character from the Family Circus comic strip were within wide latitude given to a prosecutor in discussing evidence. The prosecutor's "SODDI" description and "Not Me" analogy more or less accurately characterized the defense's theory of case. 283 Kan. at 429-30.

Here, Morton cites only to the district court's decision to sustain defense counsel's objection and admonish the jury as evidence that

the comment was improper. Even if the court were to follow the logic of *McCray* and deem the "smoke and mirrors" comment impermissible, Morton has failed to persuade us the comment is indicative of the prosecutor's ill will toward Morton. Like the analysis regarding the prosecutor's improper bolstering of Youngers' credibility, the comment was very brief and not emphasized by the prosecutor. Moreover, the district court properly instructed the jury to disregard the statement.

Morton contends the cumulative effect of prosecutorial misconduct denied him a fair trial. " 'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial.' [Citation omitted.]" *State v. Plaskett*, 271 Kan. 995, 1022, 27 P.3d 890 (2001).

Only two items which Morton cite constitute prosecutorial misconduct: improper bolstering of witness credibility and reference to matters not in evidence. Both comments were very brief and not emphasized. Neither appears to demonstrate ill will on the prosecutor's part, only minor mistakes.

We conclude trial errors were not so great as to require reversal of Morton's convictions. Morton presented his defense to the jury and it was rejected. It does not appear reasonably likely that any of the purported errors would have affected the outcome in this case or that Morton was denied a fair trial.

## Criminal History Determination

Morton challenges the district court's inclusion of his prior convictions in his criminal history score, thereby enhancing his sentence. Morton claims this violated *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Morton, however, concedes his arguments have been previously rejected by the Kansas Supreme Court. See *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002) (including prior criminal convictions in Kansas Sentencing Guidelines Act criminal history score is constitutional). We are duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its

previous position. *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). Our Supreme Court recently reaffirmed its holding from *Ivory* in *State v. Gonzalez*, 282 Kan. 73, 115-19, 145 P.3d 18 (2006) (affirming *Ivory* rule after other United States Supreme Court post-*Apprendi* decisions). Because our Supreme Court clearly is not departing from its precedent, Morton's sentence must be upheld.

Affirmed.