(213 P.2d 1084)
No. 100,299

STATE OF KANSAS, *Appellee*, v. ANTHONY VINCENT CURRERI, *Appellant*.

Opinion filed August 21, 2009.

*Matthew J. Edge*, of Kansas Appellate Defender Office, for appellant.

*Linda J. Lobmeyer*, assistant county attorney, *John P. Wheeler, Jr.*, county attorney, and *Steve Six*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON and MARQUARDT, JJ.

MCANANY, J.: Anthony Vincent Curreri appeals his convictions and sentences for aggravated battery, criminal restraint, and two counts of domestic battery, resulting from two domestic altercations involving Curreri's live-in girlfriend, Silvia Perez.

This appeal involves the second altercation which followed a conversation between Curreri and Perez regarding attractive prospective sexual partners other than each other. When Perez identified one such possible sexual partner, Curreri was overcome by jealousy and began hitting her on the head. She ran into the bathroom to escape, and Curreri followed. Curreri pushed Perez onto the bathroom floor, where she struck her head on the bathtub. Curreri then got on top of her and began to strangle her to the point that she almost lost consciousness.

Following his convictions, Curreri was sentenced to a controlling presumptive term of 27 months in prison, to be served consecutive to a Nevada sentence for which he was on felony probation at the time of these crimes.

### Criminal Restraint

Curreri contends the evidence was insufficient to sustain his criminal restraint conviction because the State failed to prove that he substantially interfered with Perez' liberty. K.S.A. 21-3424 defines criminal restraint as "knowingly and without legal authority restraining another person so as to interfere substantially with such person's liberty." The State had the burden to prove each element of the crime. We examine the record in the light more favoring the State to determine if the jury could have found Curreri guilty beyond a reasonable doubt. See *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007). In doing so, we do not revisit issues of credibility, nor do we reweigh the evidence. *State v. Green*, 280 Kan. 758, 761, 127 P.3d 241 (2006). Whether there was substantial interference with the victim's liberty is generally a question of fact to be determined by the jury based upon all the circumstances. *State v. Timms*, 29 Kan. App. 2d 770, 775, 31 P.3d 323 (2001).

Curreri argues that his criminal restraint conviction is based upon the State's theory that he restrained Perez while choking her. Thus, he contends, any restraint "was merely incidental to the commission of another offense, and thus did not pose a substantial interference."

At trial Perez testified that Curreri pushed her down onto the bathroom floor. She testified that Curreri was "on top of me, and—and he had his hands around me, my throat." As Curreri applied pressure, "I almost became unconscious." While Curreri was choking Perez she tried to get him off of her. Perez' inability to breathe scared her, and she struggled to free herself. Curreri testified in his own defense and denied keeping Perez from leaving the bathroom. He testified that once Perez was on the bathroom floor, he did not leave. The altercation continued, and Curreri was "above" her. The prosecutor argued in closing:

"[W]hen I asked, Did you leave when she was on the floor? No, it continued. She couldn't get up. She couldn't get away. She told you she struggled. She had to fight. She had to try to get away. . . . She didn't want to be on the floor. She didn't want to have him on top of her. She had no liberty. He was restraining her liberty."

Curreri relies on *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), for support. In *Buggs*, our Supreme Court interpreted the term "facilitate" in the kidnapping statute (K.S.A. 21-3420[b]) to mean "something more than just to make more convenient. . . . [A] taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier' as, for example, by lessening the risk of detection." 219 Kan. at 215. *Buggs* then held:

"[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. at 216.

It is important to consider this language cited from *Buggs* in context. In *Buggs*, a consolidated appeal, the defendants approached the victims as they were closing their store for the night, forced them back into the store, demanded money, forced them to lie down on the floor, and one of the defendants then raped one of the victims. In *Buggs*, the element of the victims' restraint was an element of the crime of kidnapping, but not a separately charged crime. The statute at issue in *Buggs* defined kidnapping as " 'the taking or confining of any person, accomplished by force, . . . [t]o facilitate . . . the commission of any crime.' " 219 Kan. at 213. One defendant was convicted of robbery and kidnapping. The other was convicted of robbery, rape, and kidnapping. The defendants argued:

"[E]very robbery and every rape is accompanied by some movement or at least some detention of the victim. To construe our kidnapping statute so as to cover their conduct here, they say, is to convert every robbery and every rape into the more serious offense of kidnapping. And, they say, to permit their convictions for kidnapping in addition to the robbery and rape is in each instance to carve two offenses out of what is essentially one." 219 Kan. at 209.

The kidnapping statute at issue in *Buggs* was enacted in 1970. In the context of the prior kidnapping statute, our Supreme Court had rejected arguments similar to the argument raised by the defendants in *Buggs* in *State v. Ayres*, 198 Kan. 467, 426 P.2d 21 (1967), and *State v. Brown*, 181 Kan. 375, 312 P.2d 832 (1957), both kidnap/rape cases. Since those decisions, a line of cases developed in California, New York, and Michigan which was more favorable to the *Buggs* defendants' argument. The New York court in *People v. Lombardi*, 20 N.Y.2d 266, 270, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967), noted:

"[T]he direction of the criminal law has been to limit the scope of the kidnapping statute, with its very substantially more severe penal consequences, to true kidnapping situations and not to apply it to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident."

The California court, in *People v. Daniels*, 71 Cal. 2d 1119, 1138, 80 Cal. Rptr. 897, 459 P.2d 225 (1969), cited the American Law

Institute's comments to the kidnapping section of the Model Penal Code (§ 212.1), which observed:

" 'Examples of abusive prosecution for kidnapping are common. Among the worst is use of this means to secure a death sentence or life imprisonment for behavior that amounts in substance to robbery or rape, in a jurisdiction where these offenses are not subject to such penalties. . . .' [Citations omitted.]"

In Michigan, in *People v. Adams*, 389 Mich. 222, 238, 205 N.W.2d 415 (1973), the court formulated the "Michigan Asportation Standard" whereby "[t]he movement element is not sufficient if it is 'merely incidental' to the commission of another underlying lesser crime."

Having considered these cases, our Supreme Court observed that "[w]ere our former statute still on the books we might find such cases more persuasive than we do. They are not without force." *Buggs*, 219 Kan. at 213. In examining the current version of our kidnap statute, K.S.A. 21-3420, the court stated:

"We are concerned here with the second type of intent, *i.e.*, to hold the victim '(b) to facilitate . . . the commission of any crime.' It is when this purpose is present that the New York, California and Michigan courts have problems. Their rationale is that if the only purpose and result of the taking is to facilitate a *lesser* crime, the taking is by definition 'merely incidental' to the *lesser* crime and the kidnapping statute was therefore not intended to cover it. . . .

. . . .

". . . We agree with those courts that a kidnapping statute is not reasonably intended to cover movements and confinements which are slight and 'merely incidental' to the commission of an underlying *lesser* crime." (Emphasis added.) 219 Kan. at 214-15.

Viewed in context, the import of the language in *Buggs* cited by Curreri is clear. The issue being addressed was the practice of turning a lesser crime into the more serious crime of kidnapping by focusing on the restraint of the victim, which is more properly associated with the commission of the lesser crime. The facts before us present the exact opposite. Curreri was charged with aggravated battery pursuant to K.S.A. 21-3414(a)(1)(B), a severity level 7 person felony. Curreri was also charged with criminal restraint pursuant to K.S.A. 21-3424, a class A person misdemeanor. The interference with Perez' liberty, which was the basis for the

lesser charge of criminal restraint, was not used as a bootstrap to a more serious charge, as was done in *Buggs*. Restraint or the deprivation of a person's liberty is not an element of aggravated battery. The *Buggs* court repeatedly referred to the use of restraint associated with a lesser crime to prove the more serious crime of kidnapping. That did not occur here. *Buggs* does not control.

Curreri's "incidental restraint" argument, that he is being prosecuted for criminal restraint for conduct that is essentially part of the aggravated battery charge of restraining Perez while choking her, is akin to a claim that he is being prosecuted twice for the same conduct. Since Curreri does not explicitly address this issue of multiplicity, we will not dwell on it, other than to say that under the two-step analysis in *State v. Schoonover*, 281 Kan. 453, Syl. ¶ 15, 133 P.3d 48 (2006), the charges against Curreri do not place him in jeopardy twice for a single offense because the elements of criminal restraint and aggravated battery are clearly distinct. See *State v. Thompson*, 287 Kan. 238, 200 P.3d 22 (2008).

We conclude that there was substantial evidence to support Curreri's conviction of criminal restraint, a misdemeanor.

### Aggravated Battery

Curreri also challenges the sufficiency of the evidence to support his aggravated battery conviction. We apply the substantial evidence standard as before. To support this conviction, Curreri must have intentionally caused bodily harm to Perez in a manner in which great bodily harm, disfigurement, or death can be inflicted. See K.S.A. 21-3414(a)(1)(B). Curreri acknowledges that "[c]hoking, in general, can result in death." However, his argument focuses on the extent of the injuries sustained by Perez as a result of his act and the fact that she did not actually suffer great bodily harm. The plain language of the statute focuses on the potential that great bodily harm, disfigurement, or death *can* be inflicted, not whether these consequences actually occurred.

Curreri argues that the injury Perez sustained supports simple battery but not aggravated battery. This argument ignores several important considerations. First, whether the defendant's conduct could cause great bodily harm under K.S.A. 21-3414(a)(1)(B) is a

question of fact for the jury. *State v. Morton*, 38 Kan. App. 2d 967, 971-73, 174 P.3d 904, *rev. denied* 286 Kan. 1184 (2008). Second, Curreri's jury was instructed on the lesser included offense of simple battery. Third, there was ample testimony that Curreri's choking of Perez could have resulted in serious injury or death. Considering all of this, the jury rejected the alternative of simple battery. There is ample evidence to support its decision to do so. The State did not have to prove that great bodily harm or disfigurement was actually inflicted, only that it could have been inflicted. See *Morton*, 38 Kan. App. 2d at 972-73; *State v. Tisdale*, 30 Kan. App. 2d 524, 525-26, 43 P.3d 835, *rev. denied* 274 Kan. 1118 (2002).

*Domestic Battery*

Curreri next argues the domestic battery statute under which he was convicted is unconstitutional when applied to unmarried cohabitating couples. Our consideration of the constitutionality of a statute is a question of law over which appellate courts have unlimited review. *State v. Cook*, 286 Kan. 1098, 1113, 191 P.3d 294 (2008).

Curreri failed to raise this issue before the district court. While we generally do not consider constitutional challenges asserted for the first time on appeal, *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007), we will consider Curreri's argument based upon the principles expressed in *State v. Hawkins*, 285 Kan. 842, 845, 176 P.3d 174 (2008).

We presume a statute is constitutional and resolve all doubts in favor of its validity. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008). We will construe a statute as constitutionally valid when there is a reasonable way to do so without ignoring the apparent intent of the legislature in enacting it.

The gravaman of Curreri's criticism of the domestic battery statute is that it "creates an incident of marriage by imposing an enhanced sentence for one who commits battery on his or her spouse." When a defendant argues that the statute is unconstitutional "as applied," we are concerned only with its application to the defendant's circumstances, not with all possible applications of

the statute. See *Joe Self Chevrolet, Inc., v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, 637, 802 P.2d 1231 (1990).

Curreri was convicted under K.S.A. 21-3414(a)(1)(B), which defines aggravated battery as "intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." As noted earlier, this is a severity level 7 person felony.

On the other hand, Curreri was also convicted under K.S.A. 21-3412a(a)(2), which defines domestic battery to include:

"[I]ntentionally causing physical contact with a family or household member by a family or household member when done in a rude, insulting or angry manner."

Section (c)(1) of K.S.A. 21-3412a defines "family or household member" as:

"[P]ersons 18 years of age or older who are spouses, former spouses, parents or stepparents and children or stepchildren, and persons who are presently residing together or who have resided together in the past, and persons who have a child in common regardless of whether they have been married or who have lived together at any time. Family or household member also includes a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time."

Curreri committed these crimes while on felony probation. Accordingly, for his felony conviction for aggravated battery he was subject to a nondeparture sentence of imprisonment. See K.S.A. 21-4603d(f). The presumptive range of his sentence was from 25 to 29 months given his criminal history score of C. See K.S.A. 21-4704(a). Curreri was sentenced to 27 months in prison with 12 months' postrelease supervision. For his domestic battery convictions Curreri was sentenced pursuant to K.S.A. 21-3412a for two Class B person misdemeanors. Each concurrent sentence was for 6 months in the county jail. Thus, as applied to Curreri, both convictions of domestic battery bore a significantly less severe penalty than the penalty for his aggravated battery conviction.

Curreri was cohabitating with Perez at the time of the altercation. He claims that the portion of K.S.A. 21-3412a which applies to cohabitating persons violates Kansas' Defense of Marriage

Amendment (KDOMA) to the Kansas Constitution. KDOMA provides:

"(a) The marriage contract is to be considered in law as a civil contract. Marriage shall be constituted by one man and one woman only. All other marriages are declared to be contrary to the public policy of this state and are void.

"(b) No relationship, other than a marriage, shall be recognized by the state as entitling the parties to the rights or incidents of marriage." Kan. Const. art. 15, § 16 (2008 Supp.).

Curreri's constitutional argument consists of less than 2 pages in his appellate brief. He views the domestic battery statute as creating a special protection that is an incident of marriage and argues that the statute is unconstitutional when, as here, it extends its protections to persons who are not married.

The intent of the people of this State in adopting this constitutional amendment is clear from the amendment's plain language: (1) A valid marriage contract can be entered into only by one man and one woman; (2) all other claimed marriages are void in Kansas; and (3) the State will not recognize as valid marriages other relationships which purport to entitle the parties to "the rights or incidents of marriage." Kan. Const. art. 15, § 16 (2008 Supp.).

It is noteworthy that the constitutional amendment does not refer to "*a* right or *an* incident of marriage." Its reference to "the rights or incidents of marriage" obviously refers not to an isolated right that a married person may share in common with nonmarried persons, but rather the "bundle of rights" that identifies marriage as a distinct and separate institution. This provision in the amendment seeks to cut off attempts to circumvent the amendment's definition of marriage by those seeking recognition of a relationship, other than between one man and one woman, which otherwise purports to bear all the hallmarks of a conventional marriage.

Curreri's convictions of domestic violence are not predicated upon the State recognizing his relationship with Perez as bearing all the hallmarks of a conventional marriage. The fact that Curreri and Perez were living together does not entitle them to all the benefits, rights, and obligations of marriage (*e.g.*, spousal support, inheritance rights, or the marital privilege), as well as the right to be protected by K.S.A. 21-3412a. To the contrary, this statute sim-

ply extends to Perez the added protection from being battered that is extended to other persons, married or not, who may be particularly vulnerable to violence due to their close proximity to or relationship with the defendant. The application of K.S.A. 21-3412a to Curreri is not an unconstitutional attempt to impress upon the relationship between Curreri and Perez all the hallmarks of a conventional marriage.

Our conclusion is consistent with the approach taken by the Supreme Court in Ohio, the only state that has judicially addressed the constitutionality of its domestic violence statute when applied to unmarried cohabitating persons in light of Ohio's Defense of Marriage Constitutional Amendment (ODOMA). See *State v. Carswell,* 114 Ohio St. 3d 210, 212-16, 871 N.E.2d 547 (2007). In *Carswell,* the Ohio Supreme Court concluded that the Ohio domestic violence statute does not violate ODOMA because it does not "create or recognize a legal relationship that approximates the designs, qualities, or significance of marriage," as prohibited by the ODOMA. 114 Ohio St. 3d at 216. The court observed:

"While the intent of [Ohio's] domestic-violence statute is to protect persons from violence by close family members or residents of the same household, the intent of [ODOMA] was to prevent the creation or recognition of a legal status that approximates marriage through judicial, legislative, or executive action. [Ohio's domestic violence] statute and [ODOMA] are not in conflict." 114 Ohio St. 3d at 216.

We conclude that K.S.A. 21-3412a is not predicated upon the State's recognition of a relationship, other than the marriage relationship between one man and one woman, being entitled to the rights or incidents of marriage. K.S.A. 21-3412a(a)(2) is not unconstitutional as applied to Curreri.

*Curreri's Sentence*

Curreri's final contention is that the trial court erred by considering his prior adult convictions for sentencing purposes without requiring those convictions to be proven to a jury beyond a reasonable doubt. Curreri claims this practice violates the principles of *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

*State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), controls and expressly holds the contrary of Curreri's position. We are duty bound to follow it. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Accordingly, Curreri's sentencing claim fails.

Affirmed.