NOT DESIGNATED FOR PUBLICATION

No. 120,285

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON MICHAEL LYNN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed November 15, 2019.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BRUNS, J., and WALKER, S.J.

PER CURIAM: A jury convicted Jason Michael Lynn of numerous crimes. Lynn
appeals a single aggravated battery conviction, arguing that insufficient evidence
supported that conviction. He also argues that the trial court wrongly classified his
previous New Jersey conviction for "promoting prostitution" as a felony offense for
criminal history purposes. Because neither of Lynn's arguments are persuasive, we
affirm.

A jury convicted Lynn of one count of criminal restraint, one count of aggravated intimidation of a witness, two counts of aggravated battery, two counts of battery, three counts of aggravated assault, three counts of criminal threat, and three counts of domestic battery. Lynn committed the crimes against his then-girlfriend, H.R., H.R.'s roommate, L.H., and L.H.'s ex-boyfriend, B.S. On appeal, however, Lynn challenges the sufficiency of the evidence supporting his first aggravated battery conviction alone. The facts surrounding his first aggravated battery conviction presented at trial were as follows:

On May 31, 2017, Lynn accused H.R. of cheating on him with another man. According to H.R., after she denied cheating on Lynn, Lynn hit her in the head. Lynn then "forcefully pushed [her] against the wall," "put[ting] both hands around [her] neck[,] kind of . . . pinn[ing her] up against the wall." H.R. explained that although she did not lose consciousness, things "[got] a little blurry." She asserted that although it felt "like 30 minutes" when Lynn had his hands around her neck, she guessed it was "probably about two or three seconds." H.R. explained that after Lynn released her neck from his grip, he prevented her from leaving the room they were in. Lynn later hit H.R. in the back and the head. He also told H.R., "Bitch, I will kill you."

On cross-examination, when asked whether Lynn gripped his hands around her neck tight, H.R. stated, "Not super tight, but there was pressure. I mean—." H.R. also admitted during cross-examination that she did not suffer physical injuries from Lynn "put[ting] his hands around [her] neck."

Lynn testified on his own behalf. Lynn admitted that he had been drinking "quite a lot" before he accused H.R. of cheating on him. Lynn and his attorney had the following exchange about when Lynn "grab[bed H.R.]" during their "little argument."

"[Lynn]: . . . And when I grab her, I kind of grab her like this, and like up on the bed type [*sic*], because our bed's a little bit higher. So I kind of grabbed her like that, kind

2

of pushed her on the bed. And I realized—I backed up a little bit. I said, [l]isten, I need to know what's going on, you know, tell me the truth, like, don't—

"[Defense counsel]: Okay.

"[Lynn]: Okay.

"[Defense counsel]: Tell me how—you said you grabbed her. Did you grab her around the shoulders?

"[Lynn]: I grabbed her, like, right up in here, like if you were to grab somebody and you would—I mean—

. . . .

"[Defense counsel]: You're pointing to the top part of your chest?

"[Lynn:] Top part of my chest, neck area, like, I was just kind of grabbing her, like, pushing her upwards.

. . . .

"[Defense counsel]: All right. Let me stop you there. Did you squeeze her neck or chest area at that time?

"[Lynn]: To be honest, I mean, I didn't strangle the girl, no. I didn't squeeze—I mean, like I said, I grabbed up in here.

"[Defense counsel]: Okay. All right.

"[Lynn]: I didn't squeeze nobody's neck like this. I didn't grab her neck in a way to cut her circulation off. But, I mean, if you want to call it, like, just kind of grabbing somebody, I mean, I don't know how to explain it. I didn't strangle nobody. I didn't—I mean, I did grab her around her neck area and push her back on the bed, yes, I did do that."

At sentencing, Lynn challenged the inclusion of his New Jersey "promoting prostitution" conviction in his criminal history as an adult person felony. The State argued that the trial court could consider Lynn's promoting prostitution conviction as a person felony based on *State v. Rodriguez*, No. 117,297, 2018 WL 1973455 (Kan. App. 2018) (unpublished opinion), which involved whether the court could consider a different New Jersey crime a person felony for criminal history purposes. In the end, the trial court determined that Lynn's New Jersey conviction for promoting prostitution should be

3

considered a nonperson felony for criminal history purposes. This resulted in lowering Lynn's criminal history score from B to C.

Next, the trial court ruled that Lynn's convictions of misdemeanor battery for hitting H.R. in the head and misdemeanor domestic battery for hitting H.R. in the back and the head merged into his aggravated battery conviction for grabbing H.R.'s neck. The trial court sentenced Lynn to a controlling term of 76 months' imprisonment followed by 24 months' postrelease supervision.

Lynn timely appealed.

*Does Sufficient Evidence Support Lynn's Aggravated Battery Conviction?*

Lynn argues that insufficient evidence supported his aggravated battery conviction because "a 'bit of pressure' [on H.R.'s neck] for 2 or 3 seconds" could not cause great bodily harm or death as required to commit an aggravated battery. He asserts that the contact between him and H.R. had to be "of greater duration" to constitute an aggravated battery. He further asserts that "'[a] bit of pressure' could be the result of a mere touching of another person." Lynn contends that "[i]f the acts of striking [H.R.] in the head were simple batteries, then [his] act of putting his hands on [H.R.'s] neck should also be considered a simple battery." Last, Lynn stresses that since he committed his crimes, the Legislature has created the crime of "aggravated domestic battery," which makes it a felony for persons in a dating relationship to choke one another. See K.S.A. 2018 Supp. 21-5414(b)(1). Lynn argues that the plain language of the new aggravated domestic battery statute establishes that a person cannot commit an aggravated battery by grabbing another person's neck without impeding the other person's breathing or blood circulation.

The State responds that based on prior caselaw, it is readily apparent that sufficient evidence supported Lynn's aggravated battery conviction.

4

An appellate court will find that sufficient evidence supported a defendant's conviction if, after reviewing all the evidence in the light most favorable to the State, the court believes that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). An appellate court will reverse a defendant's conviction based on sufficiency of the evidence only in the rare cases where the testimony supporting the conviction is too incredible to be believed by a rational fact-finder. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

The jury convicted Lynn of aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(B), which states: "Aggravated battery is: . . . knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm . . . or death can be inflicted." K.S.A. 2016 Supp. 21-5413(b)(1)(B) "does not require the State to prove great bodily harm or disfigurement was inflicted, *only that it could have been inflicted*." (Emphasis added.) *State v. Morton*, 38 Kan. App. 2d 967, Syl. ¶ 4, 174 P.3d 904 (2008). Great bodily harm required to commit an aggravated battery differs from the bodily harm required to commit a simple battery because great bodily harm does not include "slight, trivial, minor or moderate harm, . . . [like] mere bruises." *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984). Yet, what act may cause great bodily harm or death under K.S.A. 2016 Supp. 21-5413(b)(1)(B) is a jury question. *State v. Simmons*, 295 Kan. 171, 177, 283 P.3d 212 (2012); *Morton*, 38 Kan. App. 2d at 972.

In the past, our Supreme Court has held that "[s]trangulation can result in great bodily harm or death." *State v. Williams*, 308 Kan. 1439, 1458, 430 P.3d 448 (2018). Moreover, this court has recognized that "[c]hoking, in general, can result in death." *State v. Curreri*, 42 Kan. App. 2d 460, 465, 213 P.3d 1084 (2009), *rev. denied* 290 Kan. 1097 (2010).

5

In his brief, Lynn focuses on the new aggravated domestic battery law to argue that a defendant cannot commit an aggravated battery by grabbing the victim's neck unless the defendant also impeded the victim's breathing and blood circulation. To be sure, this court has upheld aggravated battery convictions when evidence supported that the victims could not breathe. For example, in *State v. Tisdale*, 30 Kan. App. 2d 524, 525, 43 P.3d 835 (2002), this court rejected Tisdale's argument that insufficient evidence supported his aggravated battery conviction because the victim blacked out twice while he had his hands around the victim's throat. This court determined that the victim's lack of bruising around her neck was irrelevant. 30 Kan. App. 2d at 525-26. In *State v. Hill*, No. 116,788, 2018 WL 4656168, at *4 (Kan. App. 2018) (unpublished opinion), this court rejected Hill's argument that insufficient evidence supported his aggravated battery conviction because he choked the victim to the point she was unable to breath.

Yet, because evidence in this case supports that Lynn impeded H.R.'s breathing, we need not decide whether a defendant must impede the victim's breathing or circulation to commit the crime of aggravated battery. Although Lynn testified that he never strangled H.R., the act of grabbing another person's neck and exerting pressure upwards is consistent with strangling or choking. Moreover, Lynn testified that he "grab[bed H.R.] around her neck area and push[ed] her back on the bed." The word "grab" means "to seize or snatch suddenly; take roughly and quickly." Webster's New World College Dictionary 627 (5th ed. 2014). Accordingly, by using the word "grab," Lynn recognized that he seized H.R.'s neck suddenly and roughly. Moreover, a rational fact-finder could deduce that the act of grabbing a person's neck with both hands while also "pushing . . . upwards" could result in substantial force being placed on the neck. Indeed, Lynn seemingly recognized that he had placed substantial force on H.R.'s neck when he testified that after he "pushed [H.R.] on the bed," "I realized—I backed up a little bit."

Meanwhile, although H.R. testified that Lynn's hands were "[n]ot super tight" around her neck, she also testified that Lynn exerted pressure to the point that her vision

6

became blurry. Rational fact-finders could use their common knowledge and experience to deduce that H.R.'s vision became blurry because H.R. was beginning to black out. In other words, Lynn impeded H.R.'s breathing and blood circulation. Further, the trial court provided the jury with an instruction stating that the jury could use its "common knowledge and experience" when considering witness testimony. See PIK Crim. 4th 50.020 (2014 Supp.). Thus, despite Lynn's argument to the contrary, evidence supported that Lynn impeded H.R.'s breathing and blood circulation.

Moreover, Lynn's arguments ignore the circumstantial evidence supporting that he intended to cause H.R. great bodily harm or death. For example, Lynn hit H.R. multiple times. He told H.R. he was going to kill her. He also threatened H.R. with a kitchen knife. In short, Lynn's other violent acts provided the jury with a reasonable inference that Lynn desired to cause H.R. great bodily harm or death when he grabbed her by the neck. See *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016) (holding that a verdict may be supported by circumstantial evidence).

Next, Lynn's argument that he could not have committed an aggravated battery because his "physical contact [with H.R. needed to be] of greater duration" ignores that K.S.A. 2016 Supp. 21-5413(b)(1)(B) includes no time requirement. A person may violate K.S.A. 2016 Supp. 21-5413(b)(1)(B) in an instant if, in that instant, the person engages in an act that could result in great bodily harm or death. Thus, whether evidence supports that the defendant knowingly caused bodily harm in a manner that could result in great bodily harm or disfigurement is key in determining whether sufficient evidence supports a defendant's conviction. As addressed in the preceding paragraphs, here, evidence supported that Lynn could have caused H.R. great bodily harm or death when he seized her neck to the point her vision began to blur. As a result, Lynn's argument is unpersuasive.

7

Lynn's argument comparing his aggravated battery conviction to his simple battery convictions is similarly unpersuasive. Lynn notes that he was charged and convicted of simple batteries for hitting H.R. in the head and aggravated battery for grabbing H.R.'s neck. Yet, Lynn contends that hitting H.R. in the head and grabbing H.R.'s neck were similar criminal acts. Thus, Lynn argues that he should have been charged with the same crime for both acts.

In making his argument, however, Lynn ignores the appellate precedent supporting that strangling or choking somebody may constitute an aggravated battery. *Williams*, 308 Kan. at 1458; *Curreri*, 42 Kan. App. 2d at 465. Lynn ignores the specific facts of his case establishing that he could have caused great bodily harm or death when choking H.R. to the point her vision began to blur from a lack of oxygen. Simply put, the facts surrounding Lynn's simple battery crimes are irrelevant as long as sufficient evidence indicated that Lynn intended to cause great bodily harm or death by grabbing H.R.'s neck. Lynn also ignores that the trial court provided the jury with an instruction on simple battery as a lesser included offense of aggravated battery. But the jury found Lynn guilty of aggravated battery. Thus, the jury considered Lynn's contention that grabbing H.R. by the neck constituted a simple battery and rejected it.

In summary, none of Lynn's arguments about why insufficient evidence supports his aggravated battery conviction are persuasive. In the light most favorable to the State, a rational fact-finder could have found Lynn guilty beyond a reasonable doubt for aggravated battery based on his act of grabbing H.R. by the throat. As a result, we affirm his conviction.

*Does Lynn Have an Illegal Sentence?*

Appellate courts have unlimited review when considering whether a sentence is illegal as meant under K.S.A. 22-3504. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

When Lynn committed his crimes, K.S.A. 2016 Supp. 21-6811(e)(2) provided as follows:

> "An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction:
> (A) If a crime is a felony in another state, it will be counted as a felony in Kansas.
> (B) If a crime is a misdemeanor in another state, the state of Kansas shall refer to the comparable offense in order to classify the out-of-state crime as a class A, B or C misdemeanor. If the comparable misdemeanor crime in the state of Kansas is a felony, the out-of-state crime shall be classified as a class A misdemeanor. If the state of Kansas does not have a comparable crime, the out-of-state crime shall not be used in classifying the offender's criminal history."

Lynn argues that the trial court should not have classified his New Jersey conviction for promoting prostitution as a felony for criminal history purposes. Lynn contends that New Jersey handled his conviction for promoting prostitution the same way Kansas handles misdemeanor offenses. Particularly, Lynn stresses that after he violated his probation, he spent less than a year in county jail for his promoting prostitution conviction.

Even so, there are two problems with Lynn's argument. First, Lynn's argument about how the trial court scored his promoting prostitution conviction for criminal history purposes is moot. Appellate courts do not decide moot questions or make advisory opinions. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012). In this case, it is readily apparent that Lynn's argument is moot because even if we scored his promoting

9

prostitution conviction as a nonperson misdemeanor, as he argues, Lynn would still have a criminal history score of C.

Moreover, if we rejected Lynn's argument and counted Lynn's promoting prostitution conviction as a nonperson felony for criminal history purposes, Lynn would have a criminal history score of C. And if we assumed for argument's sake that Lynn's promoting prostitution conviction constituted a nonperson misdemeanor for criminal history purposes, Lynn would still have a criminal history score of C. Under K.S.A. 2016 Supp. 21-6804(a), defendants with one person felony and one nonperson felony receive a criminal history score of C. Once a defendant has achieved a criminal history score of C, only the commission of *additional person felonies* would result in a defendant achieving a higher criminal history score. Thus, so long as a defendant with a criminal history score of C does not commit a new person felony, that defendant may commit an infinite amount of nonperson felonies and still keep a criminal history score of C.

Here, even if we excluded Lynn's promoting prostitution conviction from his criminal history entirely, Lynn's criminal history includes one person felony and two nonperson felonies. Because the trial court already determined that Lynn's promoting prostitution conviction was a nonperson crime, and no party challenges the classification of Lynn's promoting prostitution conviction as a nonperson crime, classification of Lynn's promoting prostitution conviction as a nonperson misdemeanor offense would have no effect on Lynn's criminal history score. For this reason, Lynn's criminal history score challenge is moot.

Notwithstanding the preceding, the trial court correctly determined that Lynn's New Jersey conviction for promoting prostitution constitutes a felony for criminal history purposes. In his brief, Lynn argues that because the trial court in his New Jersey promoting prostitution case sentenced him to under a year in jail after he violated his probation, his crime is comparable to a Kansas misdemeanor. But K.S.A. 2016 Supp. 21-

10

6811(e)(2) requires courts to look to the convicting jurisdiction to determine whether a crime should be classified as a felony or misdemeanor.

New Jersey's promoting prostitution statute—N.J. Stat. Ann. § 2C: 34-1—constitutes a crime of the second or third degree. "In the case of a crime of the third degree," trial courts may sentence a defendant "for a specific term of years which shall be fixed by the court and shall be between three years and five years." N.J. Stat. Ann. § 2C:43-6a.(13). "In the case of a crime of the second degree," trial courts may sentence a defendant "for a specific term of years which shall be fixed by the court and shall be between five years and 10 years." N.J. Stat. Ann. § 2C:43-6a.(2).

New Jersey has never classified its crimes as felonies and misdemeanors. Initially, the state classified crimes as misdemeanors and high misdemeanors. Later, the state also adopted statutes that classified crimes as either first-, second-, third-, or fourth-degree crimes. See *Rodriguez*, 2018 WL 1973455, at *5 (discussing the classification of New Jersey crimes). Because New Jersey labeled its crimes differently than other jurisdictions, the New Jersey Supreme Court created a test for determining whether New Jersey crimes constituted misdemeanors or felonies. In *State v. Doyle*, 42 N.J. 334, 349, 200 A.2d 606 (1964), the New Jersey Supreme Court held crimes that "are punishable by imprisonment for more than a year in state prison" were equatable to a common-law felony. See also *Kaplowitz v. State Farm Mut. Auto. Ins. Co.*, 201 N.J. Super. 593, 598, 493 A.2d 637 (Law. Div. 1985) (holding that a third-degree crime constituted a felony under the *Doyle* test). Several courts, including this court in *Rodriguez*, adopted the *Doyle* test to determine whether a defendant's prior New Jersey conviction constituted a felony or a misdemeanor for criminal history purposes. *Rodriguez*, 2018 WL 1973455, at *5; see *United States v. Brown*, 937 F.2d 68, 70 (2d Cir. 1991); *State v. Hogan*, 234 N.C. App. 218, 227, 758 S.E.2d 465 (2014); *State v. Gillison*, No. 08-1146, 2009 WL 606230, at *1 (Iowa Ct. App. 2009) (unpublished opinion).

11

Lynn includes no argument why the *Rodriguez* court's adoption of the *Doyle* test was errant. As a result, Lynn has abandoned any argument he may have had about the appropriateness of applying the *Doyle* test. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (holding that an issue not briefed is deemed waived and abandoned).

Next, Lynn's argument about the amount of time he spent in jail ignores that under the *Doyle* test, courts consider the punishment that a defendant could receive. Lynn received a jail sentence under a year after the trial court revoked his probation. Nevertheless, N.J. Stat. Ann. § 2C:43-6a.(2)-(3) plainly provides that the trial court could have sentenced him to 3 to 10 years' imprisonment, which is greater than the 1-year imprisonment sentence the *Doyle* court classified as a felony.

As a result, under the *Doyle* test, New Jersey would classify Lynn's crime of promoting prostitution as a felony. In turn, under K.S.A. 2016 Supp. 21-6811(e)(2), Lynn's New Jersey crime for promoting prostitution constitutes a felony for criminal history purposes. Thus, the trial court properly classified Lynn's New Jersey promoting prostitution conviction as a felony for criminal history purposes.

Affirmed.