NOT DESIGNATED FOR PUBLICATION

No. 115,029

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMPSON D. GRANT III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed April 7, 2017. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*:  Sampson D. Grant III appeals from the verdicts of a Sedgwick County jury finding him guilty of two counts of commercial sexual exploitation of a child. Finding no errors, we affirm.

FACTS

Grant was convicted by a jury of two counts of commercial sexual exploitation of a child stemming from events that occurred sometime between May 1 and May 9, 2015. In May 2015, K.A., who was 16 years old at the time, had run away from her foster home

1

in Wichita sometime near the conclusion of April. K.A. met up with Kiley Jordan, an individual K.A. described as "like family to me." Jordan informed K.A. she knew some individuals who could help the two make money. Jordan introduced K.A. to Desiree Gibson, Tiam Douglas, Grant, and an unidentified female at a QuikTrip. K.A. got in the car with the four individuals, leaving Jordan at the QuikTrip and going to a hotel.

At the hotel, K.A. received clothes and hygiene products from Gibson and took a shower. Following the shower, K.A. was given the name Sunshine by Douglas and was "[v]aguely" told by Gibson what was expected of her to receive money. K.A. understood she would be expected to do "tricks" and a trick was "[s]omething sexual for money." On a prepaid phone provided by Douglas, K.A. began conversing with her first customers, getting pointers on what to say from Douglas.

Shortly thereafter, K.A. was directed to her first appointment involving sexual contact for money, and she received approximately $120. Douglas pressured K.A. into turning over all of the money she had earned. Over a period of several days, K.A. was required to provide sexual acts for money at the hotel on more than 10 occasions. In addition, K.A. would accompany Douglas, Grant, or both to customers in order to perform sexual acts for money. Grant was present off and on throughout this series of events. However K.A. noted Grant "barely talked" to her.

The majority of the money K.A. received was given to Douglas. When K.A. was caught holding back money, Douglas wrestled the money from her hitting K.A., causing her nose to bleed and bruising her. Of the over $1,000 K.A. made during her time with Douglas, she only received $140. Following the physical altercation with Douglas, Douglas left the motel, leaving K.A. with Grant in the motel room.

Grant informed K.A. it was wrong of her to come to the motel "expecting to get money and then leave." Grant told K.A. she never should have worked with Douglas and

2

instead should have worked with him. He told K.A. he would split any earnings nearly 50/50 with her and she "wouldn't have to worry about [him] putting [his] hands on [her]." Despite Grant's proposition, K.A. did not consider working for him. K.A. was then picked up from the motel by Jordan. After leaving the motel, Grant got in touch with K.A. and propositioned her another time, offering $100 just to come to his location. K.A. never took Grant up on his offer.

After leaving the motel, K.A. and Jordan "were still trying to get more money" and went into business for themselves. K.A. and Jordan placed an ad on the website "Backpage" offering their services under the "Wichita escorts" tab. Backpage was a website comparable to Craigslist, with "any number of services . . . [b]oth legal and illegal."

Detective Robert Shea with the Wichita Police Department was informed of an escort advertisement on Backpage that had the photo of K.A. who the Wichita Police Department recognized as "an active runaway." Detective Shea engaged K.A. and Jordan through text messages and agreed to 30 minutes of sexual activity with both girls for $250. Detective Shea agreed to meet the girls at the Clarion Hotel. After meeting the girls in the hotel room and exchanging the $250, Detective Shea gave "the verbal bust signal" and the girls were arrested.

Officers were told to locate Grant in reference to this case, and they picked him up at his residence. Grant was *Mirandized* before officers spoke to him. In Grant's possession was a cellular phone from which the authorities were able to recover the phone number Detective Shea had called. Grant claimed it was his mother's phone and also Douglas had used the phone some before.

Backpage had a search function where an individual could search by telephone number and find all advertisements on the website associated with that particular

3

telephone number. When Grant's cell phone number was searched on Backpage an advertisement for an escort appeared from Lawrence. When confronted with this information, Grant claimed he did not "know what Backpage was," did not know why his phone number would have appeared on the website, and noted that "anybody could put an ad up with his number." Grant did acknowledge he had received some inquiries about a girl but had ignored the inquiries.

When first asked about Douglas and prostitution Grant denied any involvement. However, Grant eventually admitted to his involvement in the events surrounding K.A.'s prostitution. Grant admitted he picked K.A. up at the QuikTrip in exchange for $20 from Douglas because he needed gas money. Grant also revealed that Douglas paid Jordan either $100 or $200 in exchange for sending K.A. to Douglas, money Grant delivered to Jordan. As Grant explained, "[Jordan] was basically selling her. . . . You know, like, like, . . . it was like rent to own." Grant also admitted that he had made small talk with K.A.

On May 15, 2015, Grant was charged with one count of aggravated human trafficking. Grant was bound over on the charge following a preliminary hearing on June 25, 2015. On July 31, 2015, Grant filed multiple pretrial motions. These included a motion to invoke right to silence and preclude the creation of "snitch" testimony, a motion for specific discovery, a motion to compel the prosecution to provide notice of intent to offer K.S.A. 2016 Supp. 60-455 evidence and to identify such evidence, a motion to suppress all pre-*Miranda* statements, a motion for a *Jackson v. Denno* hearing, a motion for order of sequestration, a motion for severance, and a motion in limine.

The State filed a motion for the admission of evidence pursuant to K.S.A. 2016 Supp. 60-455 on August 14, 2015. The motion was to admit the Backpage advertisement that had been linked to the number from the cell phone Grant possessed at the time of his arrest. The State claimed the advertisement was "probative to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The

4

State asserted the evidence established that Grant was "involved in human trafficking by placing ads, using his phone number to receive communication about the ads and by profiting from human trafficking."

The State filed a second motion for the admission of evidence pursuant to K.S.A. 2016 Supp. 60-455 on August 19, 2015. The motion was to admit evidence of Grant and Gibson's relationship. Once again the State claimed the evidence was probative to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. The State asserted the evidence established that Grant was involved in human trafficking.

On August 21, 2015, the State filed an amended information changing the statutory basis for the aggravated human trafficking charge from K.S.A. 2012 Supp. 21-5426(b)(2) (human trafficking involving sexual gratification of the defendant or another) to K.S.A. 2012 Supp. 21-5426(b)(4) (human trafficking involving a person under 18 for sexual gratification of the defendant or another). Also on August 21, the pretrial motions hearing and *Jackson v. Denno* hearing were held. The State did not oppose Grant's motion for severance, motion for specific discovery, and motion for sequestration (excluding its applicability to the case detective). The State also agreed to Grant's motion to suppress all pre-*Miranda* statements as the State did not plan on introducing pre-*Miranda* statements at trial. Finally, the State conceded on Grant's motion in limine as the State did not plan to introduce evidence of Grant's criminal history. The district court then heard evidence on the State's two K.S.A. 2016 Supp. 60-455 motions.

After hearing arguments from both the State and Grant, the district court granted both of the State's K.S.A. 2016 Supp. 60-455 motions. In regard to the State's first 60-455 motion relating to the Backpage advertisement, the district court stated the evidence "was relevant and probative" and the probative value was "not outweighed . . . by the prejudicial effect."

In regard to the State's second 60-455 motion relating to Grant's relationship with Gibson, the district court stated the evidence created "the context . . . for the evidence." The district court found "[i]t would be hard to present some of this evidence in a vacuum without some of the other evidence to put it into context," and the evidence was relevant and probative.

With respect to both 60-455 issues the district court did announce it would issue a limiting instruction regarding the evidence. The instruction ultimately read: "Evidence has been admitted tending to prove that the defendant committed crimes other than the present crime charged. This evidence may be considered solely for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Finally, the district court took up the *Jackson v. Denno* motion. After hearing the testimony of Detective Derek Purcell, of the Wichita Police Department, the court ruled that Grant's statements to law enforcement during interviews while in custody were voluntary and free from undue influence or coercion.

On August 24, 2015, the first day of Grant's jury trial, the State amended the charge to two counts of commercial sexual exploitation of a child. The first count alleged Grant gave, received, offered or agreed to give, or offered or agreed "to receive anything of value to procure, recruit, induce, solicit, hire or otherwise obtain" K.A. "to engage in sexual intercourse, sodomy or manual or other bodily contact stimulation of the genitals of any person with the intent to arouse or gratify the sexual desires of the offender or another." K.S.A. 2014 Supp. 21-6422(a)(1)(A). The second count alleged Grant procured or paid for transportation or transported K.A. "with the intent to cause, assist, or promote that person to engage in selling sexual relations." K.S.A. 2014 Supp. 21-6422(a)(4).

6

Following a jury trial August 24-26, 2015, Grant was found guilty of both counts of commercial sexual exploitation of a child. On October 9, 2015, Grant filed a motion for a new trial and judgment of acquittal and a motion to impose dispositional/durational departure sentence.

The sentencing hearing occurred on October 13, 2015. Before sentencing, the district court took up the motion for a new trial and judgment of acquittal and denied the motion. After hearing from the State, Grant's attorney, and Grant, the district court imposed sentence. The district court denied Grant's motion to impose a dispositional or durational departure sentence and imposed the aggravated sentence for both offenses. The final sentence was 38 months' imprisonment on count 1 and 34 months' imprisonment on count 2. Both sentences were to run concurrent. Additionally, Grant's conviction required lifetime offender registration.

Grant timely filed his notice of appeal on the same day sentencing was pronounced, October 13, 2015.

ANALYSIS

*The K.S.A. 2016 Supp. 60-455 issues*

Grant contends that the Backpage evidence offered by the State through a motion to admit under K.S.A. 2016 Supp. 60-455 "was not probative to prove a material fact" and therefore "the district court erred in granting the State's motion." We note that Grant has not briefed the issue of the district court's ruling on the second 60-455 motion (allowing evidence of the relationship between Grant and Gibson to be presented to the jury) and therefore we will not consider that issue further. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

7

Citing *State v. Reid*, 286 Kan. 494, 503, 186 P.3d 713 (2008), Grant notes that reviewing 60-455 evidence issues consist of three steps: "(1) determine if the proffered evidence is probative to prove the point for which it is offered, (2) determine if the point for which the proffered evidence is offered is material, and (3) determine whether the probative value of the evidence is outweighed by its prejudicial effect." The first step is reviewed using the abuse of discretion standard, the second step is reviewed de novo, and the third step is reviewed using abuse of discretion.

The State begins its argument claiming Grant is raising new issues on appeal. The State claims the sole argument Grant raised at the district court level in relation to the Backpage evidence was "'I'm simply arguing that the probative value is low and the prejudice is high,'" a quote from the pretrial motions hearing. The State argues that while Grant did object at trial to the Backpage evidence being admitted, his objection was "'pursuant to the pretrial rulings'" in reference to the pretrial motions hearing. The State asserts that the only issue raised by Grant at the pretrial motions hearing was in regard to the third step of reviewing 60-455 evidence issues listed by Grant on appeal, and Grant did not raise the first or second steps any time prior to this appeal. However, the State argues in the alternative that if Grant has properly raised his arguments, the district court was correct in allowing the Backpage evidence in.

Kansas law has long placed certain restrictions on the use of evidence that a person has committed other crimes or civil wrongs prior to the matter that is at issue in a trial. In pertinent part, the controlling statute provides:

"(a) Subject to K.S.A 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive,

8

opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2016 Supp. 60-455.

The same statute provides an exception allowing in evidence of prior bad acts when a defendant is accused of sexually related offenses such as those charged against Grant in this case, but the State did not invoke that portion of K.S.A. 2016 Supp. 60-455 as justification for admitting either the Backpage advertisement or the relationship between Grant and Gibson.

An appellate analysis of a district court's K.S.A. 60-455 ruling "requires several steps." *Reid*, 286 Kan. at 503.

> "First, the trial court must determine whether the fact to be proven is material under K.S.A. 2010 Supp. 60-455(b). That is whether it relates to one of the material facts identified in that provision—motive, opportunity, intent, preparation, plan, knowledge identity, or absence of mistake or accident—or some other material fact other than propensity to commit crime. To be material the fact must have some real bearing on the decision in the case. An appellate court reviews this determination independently, without any required deference to the trial court. [Citation omitted.]
> "Second, the trial court must determine whether the material fact is disputed. If so, the trial court must also determine whether the evidence is probative of the disputed material fact, that is, whether it has any tendency in reason to prove the fact. An appellate court reviews this determination for an abuse of discretion. [Citation omitted.]
> "Third, the trial court must determine whether the probative value of the evidence outweighs the potential for producing undue prejudice to the defendant. An appellate court's standard for reviewing this determination is also abuse of discretion. [Citation omitted.]" *State v. Barber*, 302 Kan. 367, 374-75, 353 P.3d 1108 (2015).

Lastly, if all of the above requirements are met, the trial court must issue a limiting instruction to the jury before admitting the evidence. *Barber*, 302 Kan. at 376.

9

In the interest of organization and simplicity, we have broken up the factors into sub-issues below. However, before beginning the analysis, we will address the State's claim that Grant is raising issues on appeal that were never decided before the district court.

The State does not allege that Grant did not object to admission of the Backpage evidence. Instead, the State maintains Grant only objected to the admission solely on the basis of the third step of a K.S.A. 2016 Supp. 60-455 analysis by stating: "'I'm simply arguing that the probative value is low and the prejudice is high.'" While it is true that "[a] defendant may not object to the admission of evidence on one ground at trial and then assert a different ground for objection on appeal," the State is incorrect in its argument. *State v. Huffmier*, 297 Kan. 306, 319, 301 P.3d 669 (2013). As the State correctly points out, Grant objected at trial, basing his objection in the third step of a 60-455 analysis. Therefore, so long as Grant keeps his argument within the scope of a 60-455 analysis, he is not changing his grounds of objection on appeal. While Grant may not have stated every step of the 60-455 analysis as a basis for his objection at trial, doing so on appeal does not mean Grant is changing the basis of his objection. Instead, Grant is completing a more thorough articulation of his original basis for objection at trial.

*Materiality of the Backpage website evidence*

Grant contends the Backpage evidence was "not probative to prove motive, opportunity, preparation, plan, identity, absence of mistake or accident, or intent."

Grant first complains that the evidence does not concern motive. Grant claims there is nothing "about an ad with another unrelated female" to provide motive for Grant to perpetrate the crime of commercial sexual exploitation of a child. Grant next asserts the Backpage advertisement does not go to opportunity because an advertisement for an escort in another town does not show opportunity to transport a minor for sex or giving or

receiving something to procure a minor to take part in sex. Additionally, Grant maintains the Backpage advertisement does not go to preparation. Grant states preparation for purposes of K.S.A. 2016 Supp. 60-455 "consists of devising or arranging means or measures necessary for the commission of the offense" and an advertisement for an escort in another town does not show preparation for either of the crimes charged.

Continuing his analysis, Grant argues the Backpage advertisement does not go to identity or plan. He complains that there is no evidence he had anything to do with the Backpage advertisements featuring K.A., so the Backpage advertisement featuring an unknown woman in another town cannot prove identity or plan. Lastly, Grant contends the Backpage advertisement does not go to absence of mistake or accident because "[s]uch use would require the prohibited propensity inference" that as a result of Grant being potentially "involved with another escort," had to be "involved in prostituting K.A." Grant maintains the sole use of the Backpage evidence would be to prove Grant knew of Backpage, a fact not disputed.

The State maintains the evidence is admissible to prove plan citing *State v. Rucker*, 267 Kan. 816, 987 P.2d 1080 (1999). The State claims that the creation of a Backpage advertisement for prostitution is "so similar to the method of committing the charged acts" it is rational to assume the same person committed both. The State contends the evidence is admissible to prove identity intertwined with absence of mistake or accident and "interchangeable with motive." It believes Grant's phone number and the Backpage advertisement were identifying characteristics of the way K.A. was exploited. Additionally, it argues the Backpage advertisement undercuts Grant's argument that he had no knowledge K.A. was going to be prostituted and was only innocently giving K.A. a ride for gas money. The State maintains the Backpage advertisement "was relevant to prove each material fact alleged."

11

Once again, the district court must determine whether the fact to be proven is material under K.S.A. 2016 Supp. 60-455(b). See *Barber*, 302 Kan. at 374. An appellate court reviews this determination independently, without any required deference to the trial court. 302 Kan. at 375. The statute itself lists motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident as examples of material facts. K.S.A. 2016 Supp. 60-455(b). The State cited all of these in its motion for the admission of evidence under K.S.A. 2016 Supp. 60-455 and Grant addressed them all in his brief.

Looking first to motive, we believe the Backpage evidence is not material as to motive. "'Motive is the moving power which impels one to action for a definite result . . . . Motive is that which incites or stimulates a person to do an action.' [Citations omitted]." *State v. Carapezza*, 286 Kan. 992, 998-99, 191 P.3d 256 (2008). In this case, the Backpage evidence does not relate to motive. The Backpage advertisement is from Lawrence, and there is no indication the individual in the photo is underage. It seems unlikely that a prostitute's advertisement from Lawrence would stimulate or incite Grant to commit the charged offenses. See *Carapezza*, 286 Kan. at 998-99. Furthermore, the Backpage evidence does not seem to create "'the moving power'" to impel Grant toward the "'definite result'" of the crimes charged. See 286 Kan. at 998-99.

We also are not persuaded by the State's contention that the Backpage evidence is material as to opportunity. It seems very obvious that the Backpage advertisement from Lawrence that did not advertise the victim or any of the witnesses in this case could not have proven opportunity to commit the crimes charged in this case.

As for the State's arguments on preparation and plan, we are not convinced the Backpage evidence is material as to either. The advertisement from Lawrence does not show that Grant was preparing or planning to partake in the prostitution business in Wichita. If the Backpage evidence had been from Wichita this might be different.

However, given the fact that the evidence is from Lawrence and does not involve K.A., we simply cannot rationally find it material to preparation or plan. The State claims that the evidence is material as to plan, citing *Rucker*, 267 Kan. at 828, for the theory that the evidence shows "the modus operandi or general method used by a defendant to perpetrate similar but unrelated crimes." However, a quick view of the caselaw shows the State is stretching this theory a bit too far.

> "'The rationale for admitting evidence of prior unrelated acts to show plan under K.S.A. 60-455 is that the method of committing the prior acts is so similar to that utilized in the case being tried that it is reasonable to conclude the same individual committed both acts. In such cases the evidence is admissible to show the plan or method of operation and conduct utilized by the defendant to accomplish the crimes or acts.' [Citation omitted.]" *Rucker*, 267 Kan. at 828.

There are no allegations that Grant posted an advertisement for a prostitute in this case. The Backpage evidence is simply not "'so similar'" to the allegations in the case "'to conclude the same individual committed both acts.'" See 267 Kan. at 828. While both may involve prostitution, they are two completely different aspects of the business.

With respect to the State's claim that the evidence helps establish identity, we likewise find the Backpage evidence is not material. The fact that a Backpage website advertisement from Lawrence was linked to Grant does not do anything to prove that he was involved in the transportation of a prostitute in Wichita. Furthermore, as discussed below, there is no dispute that Grant was in fact the individual that transported K.A. and this material fact is not disputed.

However, we do concur with the State that the Backpage evidence is material to the issues of intent, knowledge, and absence of mistake or accident. Grant's main defense throughout the case was that he innocently picked up K.A. for $20 in gas money. The fact that a Backpage advertisement was posted from Grant's phone tends to show Grant knew

13

about or was involved in the prostitution business, and as such he had the requisite intent to involve K.A. in his schemes when he picked her up.

Additionally, the advertisement goes directly to knowledge of the Backpage website and the prostitution business. Grant did concede that the Backpage advertisement proved that he had knowledge of the website but maintained this "was not in dispute," an issue we will discuss below.

Finally, the Backpage evidence tends to show that Grant did not accidentally or mistakenly pick up K.A. without knowledge of the reasons he was transporting her. It makes arguments about mistaken conduct by someone who posts advertisements for prostitutes to a website seem rather disingenuous.

*Relevance of the Backpage website evidence to matters in dispute*

Grant begins his argument by stating that his motive, opportunity, preparation, knowledge, plan, or identity were not material facts. Grant contends that opportunity, plan, and identity were not in dispute. Grant points out that it is not disputed that he transported K.A. to the motel, so identity could not have been in dispute. Furthermore, Grant acknowledged that he knew of Backpage, so knowledge was not in dispute. Lastly, Grant acknowledges that intent, absence of mistake or accident, and motive were in dispute, but such evidence does not make it past the first step of the analysis because it was not material.

The State does not really fully address this portion of this analysis in its brief. The State's only analysis of this issue is: "Whether defendant was an active participant in the crimes he was charged with was a material fact in dispute" followed by a brief summary of the facts that support his contention. Finally, the State argues the Backpage evidence "was relevant and established that defendant was involved in commercial sexual

14

exploitation and human trafficking by placing ads, using his phone number to receive communications about the ads, and by profiting from human trafficking."

As noted above,

> "the trial court must determine whether the material fact is disputed. If so, the trial court must also determine whether the evidence is probative of the disputed material fact, that is, whether it has any tendency in reason to prove the fact. An appellate court reviews this determination for an abuse of discretion." *Barber*, 302 Kan. at 375.

Both Grant and the State seem to agree that the dispute in this case is over whether Grant knew he was transporting K.A. for prostitution and was transporting money that had been involved in the prostitution business, or he was simply an innocent participant ignorant to the circumstances. With that in mind, the analysis is pretty straightforward. There is no doubt that intent, absence of mistake or accident, and motive were in dispute, and Grant concedes to these in his brief. The Backpage evidence is relevant to all three of these material facts as it has a tendency to prove each one. See *Barber*, 302 Kan. at 375. Motive though does not seem to get past the first step of the analysis, so while it might be in dispute, the Backpage evidence is not material to motive.

To reiterate, the Backpage evidence is not material as to opportunity, preparation, and plan, which negates the need for any further analysis of these three. In regard to identity, Grant admitted he took K.A. to the motel and that he transported money involved in prostitution, so identity is not disputed.

Finally, as to the issue of knowledge, Grant claims that he admitted prior to trial to having knowledge of Backpage. However, looking to the cited source of this information, we are convinced Grant did no such thing. The only evidence remotely making such a claim is from the State's first K.S.A. 2016 Supp. 60-455 motion, in which the State says

15

Grant first denied knowledge of the website, and later minimized "his knowledge and involvement in placing advertisements." It does not seem Grant ever really fully acknowledged his knowledge of Backpage. With this in mind, it is apparent that knowledge is also a material fact in dispute. The Backpage evidence is relevant to knowledge, as it has a tendency to prove knowledge of the Backpage website, which offered prostitution thinly disguised as "escort services." See *Barber*, 302 Kan. at 375.

In summary, intent, absence of mistake or accident, and knowledge are all relevant material facts in dispute. With this in mind, the trial court clearly did not abuse its discretion in letting the Backpage evidence in, as it had clear probative value on those disputed issues.

*Balancing probative value versus prejudicial effect of the Backpage website evidence*

Grant contends that "[t]he prejudicial effect of the evidence outweighed any potential probative value." Citing *State v. Davis*, 213 Kan. 54, 515 P.2d 802 (1973), Grant argues three "dangers" of prejudice were present when the Backpage evidence was presented to the jury. The State maintains the probative value of the evidence outweighs its prejudicial effect.

The State first points out that "nearly all evidence presented by the State during a criminal prosecution is going to be prejudicial to a defendant." The State maintains the only time evidence is "unduly prejudicial" is when it results in the wrong outcome in the case. The State asserts this is not what happened in this case. Finally, the State contends the limiting instruction given to the jury by the district court further mitigated any prejudice.

As we have observed, the district court must determine whether the probative value of the evidence outweighs the potential for producing undue prejudice to the

16

defendant. An appellate court's standard for reviewing this determination is also abuse of discretion. *Barber*, 302 Kan. at 375. As noted by Grant, Kansas courts have recognized at least three types of prejudice:

> """. . . . First a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed."' [Citation omitted.]" *State v. Gunby*, 282 Kan. 39, 48-49, 144 P.3d 647 (2006).

However, with this in mind, the State is correct in noting that in a prosecution, nearly all of the State's evidence is prejudicial toward the defendant "'by its nature.'" See *State v. Garcia*, 285 Kan. 1, 18, 169 P.3d 1069 (2007). For evidence to be unduly prejudicial it must "'bring[] about the wrong result under the circumstances of the case.'" 285 Kan. at 18. Lastly, it is important to remember that the trial court must issue a limiting instruction to the jury before admitting the evidence, which did happen in this case. See *Barber*, 302 Kan. at 376.

As discussed above, the evidence is probative to intent, absence of mistake or accident, and knowledge, all of which are relevant material facts in dispute. There is no doubt that the evidence is prejudicial. The jury learning that a Backpage advertisement, the same type of advertisement used by the victim in this case, was tied to Grant undoubtedly had a prejudicial effect. Further, there is at least a possibility that all three types of prejudice recognized by Kansas courts are present in this case as Grant contends. See *Gunby*, 282 Kan. at 48-49. However, as noted in the caselaw, this is not enough. The prejudicial evidence must be unduly prejudicial. *Garcia*, 285 Kan. at 18. This is what is missing from this case.

Simply listening to the authorities' interview with Grant reveals his extensive knowledge of the prostitution business. The interview was admitted into evidence and played for the jury. The introduction of the Backpage website evidence only reinforced what the jury was already going to know while also helping to establish material facts. Because of this, we conclude the evidence did not bring about the wrong result. After listening to the police interview, it likely did not take long for the jury to realize how ridiculous Grant's defense of complete ignorance to the circumstances surrounding K.A.'s prostitution was. While a prejudicial effect exists, it is far outweighed by the probative value of the evidence. The district court correctly decided this issue, and abuse of discretion is utterly absent.

*Alternative arguments presented*

Grant alternatively argues that the Kansas Supreme Court wrongly decided *State v. Prine*, 297 Kan. 460, 476, 303 P.3d 662 (2013), in which it held that evidence of "prior sexual misconduct" was admissible for a propensity inference "in a sex case" under K.S.A. 2016 Supp. 60-455(d). The State correctly points out that this argument "was never presented to the district court."

As we previously observed, the State's motion did not utilize this portion of K.S.A. 2016 Supp. 60-455 as justification for admitting evidence about the Backpage website. Hence, Grant's argument is absolutely misplaced and seemingly Grant has not viewed the entire record. At no time did the State attempt to admit the Backpage evidence under K.S.A. 2016 Supp. 60-455(d) and as the above analysis shows, it was unnecessary to do so. The State brought the Backpage evidence in under K.S.A. 2016 Supp. 60-455(b). Although this is a new argument, never brought before the trial court, it is technically improper. An issue raised for the first time on appeal is not properly before an appellate court. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But in light of the State's

18

decision to rely exclusively on K.S.A. 2016 Supp. 60-455(b) to admit the Backpage evidence, the point is ultimately moot.

Finally, Grant contends "[t]he error in admitting the evidence was not harmless." Grant claims that the evidence was improperly before the court, and as such it created a harmful error. The State addressed this argument by asserting any error that might have occurred was harmless. Given the analysis above, we will summarily deny this argument. The evidence properly came in, therefore no error occurred.

In his very last appeal issue, Grant contends that, applying *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the State was required to prove his prior criminal history to a jury beyond a reasonable doubt before it could be used to enhance his sentence. Grant asserts that this was a direct "violation of his rights under the Sixth and Fourteenth Amendments" to the United States Constitution.

Grant does acknowledge that this issue has already been decided by the Kansas Supreme Court in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), but puts forth the argument in order to preserve it for federal review. The State contends Grant's argument on this point has been consistently rejected by the Kansas Supreme Court. The State maintains that, without some indication the Kansas Supreme Court is departing from its precedent in *Ivory*, Grant's argument should be rejected.

The Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Morton*, 38 Kan. App. 2d 967, 978-79 174 P.3d 904 (2008). As Grant notes, *Ivory* expressly rejected his argument on this point. 273 Kan. at 47-48. With this court being bound by the precedent, this argument fails.

Affirmed.

19